No. 3617

Second Circuit

———

AMERICAN NAT'L INS. CO. v. CASLEY ET AL.
(WILSON & ABRAMSON, Interveners and Third Opponents)

———

(June 2, 1930.   Opinion and Decree.)

———

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for plaintiff, appellee.

Wilson & Abramson, of Shreveport, attorneys for interveners, appellees.

Foster, Hall, Barret & Smith and Philip H. Mecom, of Shreveport, attorneys for defendants, appellants.

ODOM, J. On June 11, 1928, plaintiff issued a policy of insurance on the life of Joe Casley, with Alice Casley, designated as his wife, as beneficiary. Joe Casley died on January 7, 1929, and proofs of death were promptly made. But, before payment was made by the insurance company, it was notified that Alice Casley had entered into a written agreement and contract with Shepherd Hays, Emanuel Hays, and Isom Hays, brothers or half-brothers of the deceased, Joe Casley, under which Alice Casley, the name beneficiary under the policy, was to receive only one-half the proceeds of the policy and the Hays heirs were to receive the other one-half. There being several claimants to the proceeds of the policy then in the hands of the insurance company, it came into court, cited the respective claimants and asked that it be permitted to deposit the amount in the registry of the court and be relieved of further liability, under the provisions of Act 123 of 1922. The court so ordered and the amount was deposited.

Emanuel Hays, Isom Hays, and Shepherd Hays then came into court and set up that they were entitled to one-half the amount deposited by virtue of an agreement entered into with Alice Casley, which agreement is in writing, and reads as follows:

"This agreement witnesseth:

"That whereas, Alice Casley, wife of Joe Casley, deceased and Emanuel Hays, uncle, together with his half brothers, Shepherd Hays and Isom Hays, are joint claimants to the estates of Joe Casley, Martha King and Julia Levinson;

"Now it is therefore agreed, that all sums, monies, properties, rights and credits of whatsoever nature belonging to any or all of these estates are to be divided into the following proportions:

"Alice Casley to receive one-half (½) of all sums, properties, monies, rights and credits of whatsoever nature belonging to any and all of these estates, recovered from these estates, and the other one-half (½) to go to Emanuel Hays, Shepherd Hays and Isom Hays.

"It is understood that the above is to include all insurance policies on the lives of Joe Casley, Martha King and Julia Levinson, irrespective of who the beneficiary is in such policies (with the exception of two policies in favor of Alice Casley on the life of Joe Casley, deceased, with the Southern Life & Accident Company, the amounts not to exceed Two Hundred & No /100 ($200.00) Dollars, the proceeds of which policies are hereby relinquished unto Alice Casley).

"The purpose of this agreement is to effect a complete compromise and settlement between the parties hereto in reference to the proceeds of the three named estates and the signatures of the respective parties bind them to this agreement and it is their guarantee of complete satisfaction of all claims arising out of this matter. It being understood that the parties hereto will give each other mutual support in attempting to recover the proceeds of said estates."

Alice Casley also came into court and admitted that she made the agreement and contract evidenced by the said instrument but denied that she was bound by it for the reason that she entered into and signed the contract through error of fact;

that said parties had through false and fraudulent representations led her to believe that her marriage to Joe Casley was null and void; that instead of being his wife, she was in fact and in law his concubine, and that she was entitled to no more than 10 per cent. of said amount; but that she had later learned that her marriage to Joe Casley was valid and she was entitled to the whole amount of the proceeds of the policy which was made payable to her as his wife.

Wilson & Abramson, attorneys, intervened, asserting the legality and binding effect of the said contract and claimed one-fourth the amount on deposit or one-half the amount due the Hays as a fee for representing them in the settlement. The Hays denied that they were due the attorneys anything.

The court, after hearing the case on its merits, upheld the contract, awarded one-half the amount on deposit to Alice Casley and the other half to the Hays, but ordered them to pay one-half of their share to the attorneys. Alice Casley appealed and perfected her appeal by making bond. The Hays appealed from the judgment recognizing the attorneys' right to one-half the amount coming to them, but their appeal was not perfected.

The only question, therefore, before the court is whether Alice Casley is bound by the above quoted contract. The law applicable is concisely stated in the syllabus to the case of Calhoun vs. Teal, 106 La. 47, 30 So. 288, which reads as follows:

"Where there exists error of fact, proceeding either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none, and this error was the principal cause of, and bore upon the motive for, yielding consent to a certain business agreement, relief against it may be had."

Alice Casley alleged and now contends that the Hays led her to believe that her marriage to Joe Casley was null and void and that she was advised by attorneys that if the marriage was in fact void, she was entitled to only 10 per cent. of the amount of the insurance policy, and that, laboring under the belief that her marriage was null, which was not true, and that this error was the principal cause and motive for making the contract. Our conclusion is, and we hold, that she failed to make out her case.

In making the contract, she was represented by her attorney, Mr. George T. Naff, who advised her to sign it.

The policy on the life of Joe Casley issued by the plaintiff insurance company is dated June 11, 1928, and is made payable to Alice Casley, his wife. As a matter of fact, she was not his wife at that time, for they were not married until August 17, 1928, as shown by the marriage certificate. In 1912 Alice Casley married a man by the name of Jasper Warren. They lived together until 1920, when Warren left the state and Alice heard no more from him. Jasper Warren died on August 6, 1928, eleven days before Joe Casley and Alice were married. In the meantime, in the year 1925, Alice married a man named Brady, from whom she was not divorced at the time she married Joe Casley. At the time she married Brady, her first husband was living and there had been no divorce between them. It is stated by counsel in brief that Alice obtained a divorce from her second husband, Brady, in December, 1928, after she was married to Joe Casley in August of that year.

Joe Casley left a last will and testament bequeathing to his wife, Alice, all of his property. This will was probated and Alice was put in possession of all of his prop-

erty. Joe Casley was a full brother of one of the Hays and a half brother of the other two, and the four were heirs to Martha King and Julia Levinson, each of whom had died, and it seems that their successions had been opened and were in process of administration. Joe Casley having instituted Alice his sole heir, she became interested in the successions of Martha King and Julia Levinson. After the will was probated, there was some question raised as to the capacity of Joe Casley to dispose of his property by last will. It appears also that at the time Joe Casley and Alice were married, Alice knew nothing of the whereabouts of her first husband, Jasper Warren, and that she knew nothing of his death until after the contract was entered into. Therefore, the following questions were presented for the serious consideration of Mr. Naff, who represented Alice in making the contract:

(1) There was serious doubt as to whether the marriage between Joe Casley and Alice was legal;

(2) There was serious doubt as to whether the last will and testament made by Joe Casley was valid; and

(3) There was serious question as to whether Joe Casley was a legitimate heir of either Martha King or Julia Levinson, so that if the will had been valid, it was questionable whether Alice could share in those successions.

These matters were all suggested and considered and litigation was threatened. Mr. Naff reached the conclusion and so advised his client that, in view of all these conflicting contentions, it was advisable that Alice compromise by accepting one-half of the successions of Martha King and Julia Levinson, and one-half the proceeds of the insurance policies. It seems clear, therefore, and that was the view of Mr. Naff, that this agreement was a compromise settlement between the parties. If the contention of the Hays was correct that the marriage was not legal; that the will was not valid and in any event, that Joe Casley was not a legitimate child, then Alice would be a heavy loser, for she could get no more than 10 per cent. of the proceeds of the policies and could not share in the successions. On the contrary, however, by making the settlement which she did, she was made sure of getting 50 per cent. not only of the proceeds of the policy, but of the successions as well. It is suggested by counsel for appellant that said successions were insolvent; however, the record contains no proof that they were. Counsel offered in evidence the record in the case of Succession of Martha King, but that record is not attached to this suit.

In view of all the circumstances, it cannot be said, we think, that the alleged error into which Alice was led with reference to the validity of her marriage was the principal cause or motive which induced her to make the contract. We view the contract as a compromise settlement between the parties and we think article 1831 of the Civil Code controls. That article reads as follows:

"But if the compromise be of all differences generally, and there were other subjects of dispute, besides that in which the error existed, of sufficient importance to raise a presumption that, even if the error had been discovered, the compromise would still have been made, then such error shall not invalidate the contract."

The judgment appealed from is correct and is accordingly affirmed, with all costs.