CHEHARDY, Judge.
Defendant, Treadaway Homes, Inc., appeals a trial court judgment in favor of the plaintiffs, Margaret Newport, wife of/and Robert J. Shirer, directing that there be specific performance of the contract entered into between the parties on February 1, 1978.
The judgment further ordered:
*563 “ * * * [T]hat the contract be completed in accordance with the plans and specifications as revised June 1978 including changes as noted thereon by Petitioners and extras as set out in letter of June 27, 1978 addressed Petitioner, ROBERT SHIRER, by Defendant, TREADAWAY HOMES, INC., identified as Exhibit P-11 of this record, with the exception as to type of brick, roof shingles, woodwork in den, breakfast room, kitchen and laundry which are to remain as is. Selection of paint, carpeting, floor covering, kitchen cabinets and counter tops, bathroom vanities, lighting fixtures, wallpaper and appliances are to be selected by Petitioners, MARGARET NEWPORT, WIFE OF/AND ROBERT SHIRER, and install-. ed by Defendant, TREADAWAY HOMES, INC.
“ * * * [That petitioners] shall within twenty (20) days of the signing of this judgment make known to Defendant, TREADAWAY HOMES, INC., their selections as heretofore set out and Defendant, TREADAWAY HOMES, INC., within ninety (90) days from the signing of this judgment shall satisfactorily complete the building * * *.
“ * * * [T]hat ninety (90) days from the signing of this judgment, Mr. Joseph Louvier shall on behalf of this Court, inspect the home as constructed * * * and certify to the Court that the property has been completed in accordance with this judgment.
“ * * * [T]hat within forty-five (45) days following certification to this Court by Mr. Joseph Louvier as to satisfactory completion of the aforesaid building an act of sale shall be made from TREADA-WAY HOMES, INC. to MARGARET NEWPORT, WIFE OF/AND ROBERT J. SHIRER, for the sum of ONE HUNDRED FOUR THOUSAND FOUR HUNDRED AND NO/100 ($104,400.00) DOLLARS less credit for deposit of THREE THOUSAND AND NO/100 ($3,000.00) DOLLARS.”
The judgment further awarded petitioners attorney fees in the amount of $2,000, expert fees for Joseph Louvier in the amount of $750 and cast the defendant for all costs of the proceedings.
The “agreement to purchase or sell” entered into by the parties stated in part:
“I/We offer and agree to purchase building as per plans and specifications located on # 25 square # 4 facing Tolmas Drive. Plans and specifications subject to approval of Robert Shirer, copy thereof init-ialled by Robert Shirer and Mark Treada-way. On grounds measuring about 60 X 100 or as per title. Property sold and purchased subject to all title and zoning restrictions on record, or by laws or ordinances for the sum of One hundred four thousand four hundred dollars (no cents[)] ($104,400.00) Dollars, on the terms of [$]64,400.00 cash Balance subject to conventional loan.
“Act of sale at expense of purchaser to be passed before Lender’s Notary, at any time after August 1, 1978 and prior to August 15, 1978 in the event bona fide curative work in connection with title is required, the parties herewith agree to and do extend the time for passing of act of sale by 45 days.
“Upon acceptance of this offer, vendor and purchaser shall be bound by all its terms and conditions and purchaser becomes obligated to deposit with seller’s agent immediately of the purchase price amounting to $3,000.00, and failure to do so shall not void this agreement but shall be considered as a breach thereof and seller shall have the right at his option, to demand liquidated damages equal to the amount of the deposit or specific performance, and purchaser shall in either event be liable for agent’s commission, attorney’s fees and costs.
* * # * * *
“Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent’s commission and all reasonable attorney’s fees and costs incurred by the other party, and/or agent in enforcing their respective rights.”
*564 Defendants argue that the contract to buy and sell lacked a “certain object” as required by LSA-C.C. art. 1779 because the plans and specifications were never agreed on between the parties. They also argue error as to the subject matter of the contract itself or error bearing on some substantial quality of the thing sufficient to invalidate the contract under the terms of LSA-C.C. arts. 1823 and 1842.
We cannot agree and hold that the district court judgment is correct.
The record reveals that Mark Treadaway, field superintendent for Treadaway Homes, Inc., received a sketch from the Shirers from which he drafted a set of plans and presented them to the plaintiffs on February 1, 1978. Between February and June there were a number of changes or corrections made on the original plans by the plaintiffs, necessitating the drawing of a new set of plans by Treadaway on June 21, 1978, as requested by Edwin J. Treadaway, owner and secretary of Treadaway Homes, Inc.
Mrs. Shirer testified from a diary she kept that the pilings on the home were driven on March 24, 1978; the slab was poured on May 25, 1978; and on July 31, 1978 the framing of the house was begun.
Edwin Treadaway testified that due to the number of changes made by the plaintiffs, as well as Mr. Shirer’s interference with construction crews, he verbally terminated the contract with Mr. Shirer in September of 1978. The plaintiffs then filed suit asking for specific performance, architectural supervision of construction, and attorney fees.
Although it was established in the record that numerous changes were made on the original plans by the plaintiffs, it was the opinion of a general contracting expert that the changes made by the plaintiffs were not substantial ones; that it was customary for these types of changes to occur during the course of construction of a custom house; and that they would not have prevented the construction of the home in any way. He further testified that after the slab was poured on May 25,1978, no major plumbing changes were even possible and that there were inconsistencies between the elevation plan and the working plans drawn by Mark Treadaway, which undoubtedly led to some of the corrections insisted upon by the Shir-ers. The expert also estimated that, considering the building conditions during the contract period, the normal length of time needed to complete the subject house would have been six months.
The case of Laborde v. Aymond, 172 La. 905, 135 So. 913 (La.1931), cited by defendant, is distinguishable from the situation presented here. In that case, there was no denial on the plaintiff’s part that the building occupied by the defendant was wholly different in type and size from the building described in the contract sued on, leading the court to conclude that because there was no agreement there could have been no contract.
The law and jurisprudence surrounding error sufficient to vitiate a contract was fully discussed in Hartsell v. Pipes Auto Shop, Inc., 318 So.2d 627 (La.App. 2d Cir. 1975); however, we can find no evidence of error as to the principal cause for making the contract or the subject matter of the contract itself, LSA-C.C. art. 1823; nor can we find evidence of error regarding some substantial quality of the object, LSA-C.C. art. 1842. The record is equally devoid of proof that either of the parties made an error as to substance or the object having been of a totally different nature from that which was intended, LSA-C.C. art. 1843.
We find, rather, the changes made by the plaintiffs were minor and, generally, within that sort contemplated by the parties at the time the agreement was signed. Furthermore, many of the corrections or changes were due to mistakes made in the drafting of the plans by defendant’s agent.
Accordingly, the judgment appealed from is affirmed.

AFFIRMED.