REDMANN, Judge.
Plaintiff appeals from a judgment which awarded him against defendant real estate agents Cavalier only the return of his deposit on one contract and only half of an agent’s commission on a second contract for the purchase of lots adjacent to an Interstate Highway. Plaintiff argues he is entitled to double the amount he gave Cavalier in each case plus attorney’s fees. Several other original parties and incidental demands are no longer involved. On the first contract, we affirm the granting of simple return of the deposit rather than its double because plaintiff has shown no other entitlement than to damages, and no damages save the loss of his deposit. On the second contract, we amend the award to require return of the $6,500 paid to defendant Cavalier. On neither contract has plaintiff shown any provision entitling him to attorney’s fees.
Plaintiff characterized his case as one of fraudulent misrepresentation by Cavalier of both properties as usable as commercial, when Cavalier knew they were not because of title restrictions. On a commissioner’s recommendation, the trial judge found clear and active fraud in the first transaction but insufficient proof of fraud in the second. Our view is that plaintiff’s overemphasis on the commercial-usage fraud aspect of his case on the second contract obscured perhaps clearer factual circumstances that require return to plaintiff of all money given to Cavalier.
According to the uncontroverted testimony of a third party who had agreed to buy this property, that party called for return of his $3,500 deposit because, due to the property’s non-commercial usability, he was unable to obtain financing (a condition of his purchase agreement). Instead of simply returning his deposit, however, Cavalier caused him to sign, in exchange for return of his own $3,500, a transfer of his rights under the purchase agreement to Cavalier. On the next day, Cavalier “sold” those rights to plaintiff for $3,000.
One evident right of the third party was to all rights arising from his $3,500 *934 deposit. It was therefore a fraud on Cavalier’s part to exact yet a second $3,500 from plaintiff, as if there were no deposit. This view would oblige the return to plaintiff of the $3,500 second deposit, and the $3,500 first deposit as well (since the third party testified that his contract, assigned for $3,000 to plaintiff, was construed by the parties to entitle him to'return of his deposit). However, we view the overall scheme as requiring a $6,500 payment by plaintiff to Cavalier, for Cavalier’s right to buy property which Cavalier knew plaintiff wanted for commercial use (even plaintiff’s $6,500 check to Cavalier declared itself to be for the described property, “zoned C-2 Commercial”). If Cavalier knew that this property, in the same subdivision whose title restrictions made the other property he sold plaintiff non-commercial, was also non-commercial by title restriction, he perpetrated a fraud by his silence, C.C. 1847(5), justifying rescission, C.C. 1847(2). If Cavalier did not know of the title restrictions, the plaintiff-Cavalier $6,500 contract is still rescindable for mutual error as to a quality which was “the principal cause of making the contract,” C.C. 1845;[1] Overby v. Bench, 1951, 220 La. 77, 55 So.2d 873; Note, 1952, 12 La.L.Rev. 507; Stack v. Irwin, 1964, 246 La. 777, 167 So.2d 363; Marcello v. Bussiere, La.1973, 284 So.2d 892.
The second award of the judgment appealed from is amended in principal from $1,750 to $6,500 and the judgment is otherwise affirmed.

. Cavalier’s right to buy the property, moreover, may have been non-existent. The contract he had “purchased” from his third party client stipulated “sale predicated on purchaser securing adequate financing to purchase property within 30 days.” Yet that contract was dated over 100 days prior to the third party to Cavalier to plaintiff “sales” of the contract rights (and the third party testified he had demanded his deposit back because he could not obtain financing). Thus the third party had not secured the financing within the 30-day period of the condition.